Alan L. Joscelyn
GOUGH, SHANAHAN, JOHNSON,
& WATERMAN, PLLP
33 S. Last Chance Gulch
Helena, MT 59601
Tel: 406-442-8560
Email: alj@gsjw.com

David A. Handzo
JENNER & BLOCK LLP
1099 New York Avenue NW Suite 900
Washington, DC 20001
Tel: 202-639-6000
Email: dhandzo@jenner.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA,
BILLINGS DIVISION

| | |
|---|---|
| NEIL DEERING, individually, and on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>     v.<br><br>CENTURY TEL, INC., a Louisiana corporation, CENTURYTEL BROADBAND SERVICES, LLC, a Louisiana corporation, and CENTURYTEL SERVICE GROUP, LLC, a Louisiana corporation,<br><br>            Defendants. | Case No. CV-10-63-BLG-RFC<br><br>BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS COUNTS I AND II OF PLAINTIFF'S COMPLAINT |

BRIEF IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS
COUNTS I AND II OF PLAINTIFF'S COMPLAINT

Defendants CenturyTel, Inc., CenturyTel Broadband Services, LLC, and CenturyTel Service Group, LLC (collectively, "CenturyTel"),[1] move for dismissal under Fed. R. Civ. P. 12(b)(6) of Counts I and II of Plaintiff's Complaint. Count I alleges invasion of privacy by intrusion on seclusion under Montana law. Count II alleges a violation of the Electronic Communications Privacy Act ("Wiretap Act" or "ECPA"), 18 U.S.C. §§ 2511(1)(a) and (1)(d).

Dismissal of both counts is warranted for the same reasons this Court recently dismissed those same counts in *Mortensen v. Bresnan Communication*, 2010 WL 5140454, No. CV 10-13-BLG-RFC (D. Mont. Dec. 13, 2010). This case and *Mortensen* are virtually identical. Both cases were brought by the same law firm, using substantially the same complaint, complaining of the same conduct by two different Internet Service Providers.

As in *Mortensen*, the defendants here provided notice to the plaintiff that his Internet communications and personal information could be observed, collected,

---

[1] For ease of reference, this brief refers to the Defendants collectively as "CenturyTel." However, in Defendants' Answer, CenturyTel, Inc. denied that this Court has personal jurisdiction over it. CenturyTel, Inc. is merely a holding company and has no contacts in Montana. References to "CenturyTel" in this partial motion to dismiss should not be understood as admissions that CenturyTel, Inc. had any connection whatsoever with the conduct alleged in the Complaint and such references do not thereby waive CenturyTel, Inc.'s argument that this Court lacks personal jurisdiction over it.

and shared with third parties. Accordingly, as in *Mortensen*, the plaintiff consented to such observation, collection, and disclosure, which is a complete defense to both ECPA, 18 U.S.C. § 2511(2)(d), and invasion of privacy, *State v. Brubaker*, 184 Mont. 294, 301 (1979). Defendants reserve the right to move for dismissal on other counts of the Complaint and for other grounds as to Counts I and II.

## BACKGROUND

Plaintiff's Complaint is substantially the same as the one this Court recently considered in *Mortensen*. Like Bresnan Communications in that case, CenturyTel is an Internet Service Provider ("ISP") that provides subscribers with Internet connections for web-browsing, e-commerce, e-mail, and other Internet activities. (Compl. ¶ 13). And, as in *Mortensen*, Plaintiff alleges that CenturyTel diverted substantially all of his Internet communications to NebuAd, Inc., a third-party Internet advertising company, and that NebuAd used that information to create profiles of CenturyTel customers in order to target them with preference-sensitive advertisements.

CenturyTel provided its Internet service pursuant to the terms of its "Privacy Policy for Internet Access Services" ("Privacy Policy"). *See* Ex. A.[2] That Privacy

---

[2] Plaintiff's pleading in the Complaint of the adequacy of the Privacy Policy and notice to subscribers that the Privacy Policy had changed (Compl. ¶¶ 53-56), as well as of representations made by CenturyTel in response to congressional inquiry (Compl. ¶¶ 14, 27, 36, 44(b), 52),

Policy informed subscribers, in capital letters, that "BY SUBSCRIBING TO ONE OR MORE OF OUR SERVICES, YOU AGREE TO CENTURYTEL'S COLLECTION AND USE OF YOUR PERSONAL INFORMATION AS DESCRIBED IN THIS PRIVACY POLICY." Ex. A at 2.  It also instructed them to "PLEASE READ THIS PRIVACY POLICY IN FULL BEFORE USING THE SERVICES." *Id.*

The privacy policy went on to inform subscribers that all Internet communications and browsing history, as well as personally identifiable information, could be observed and collected by CenturyTel and shared with third parties for marketing and advertising purposes.

With regard to the collection of personally identifiable information, CenturyTel informed the subscriber in the second paragraph of the Privacy Policy, titled "Collection of Data," that "personal information collected may include, *without limitation*, name, address, telephone number, personal computer specifications, e-mail address, user IDs and passwords, billing and transaction information, credit card information, and contact preferences." Ex. A at 2 (emphasis added).

---

allows this Court to consider them on this dismissal motion.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The Privacy Policy, notice to subscribers, and response to congressional inquiry are attached as Exhibits A, B, and C, respectively.

BRIEF IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION TO DISMISS
COUNTS I & II OF PLAINTIFF'S COMPLAINT

4

In a paragraph entitled "Sharing of Data," it further told subscribers that CenturyTel "may disclose [] personal information to companies and vendors that perform marketing or other services on [their] behalf." *Id.* And in a paragraph entitled "How We Use the Data We Collect," CenturyTel explained that it "uses personal information to better understand your needs and interests . . . to provide a tailored service to you . . . includ[ing] customizing your shopping experiences . . . and providing information regarding goods and services that we believe may be of particular interest to you." *Id.*

The Privacy Policy also informed users that their web activity could be monitored by CenturyTel and shared with third parties. In a paragraph entitled "Cookies and Web Beacons," CenturyTel noted that it "may collect information about your computer hardware and software – for example, your IP address, domain name, and access times – using 'cookies.' Cookies are files that Web browsers place on the computer . . . that identify you as a unique user." Ex. A at 3. That section further stated that CenturyTel "or a third party acting on our behalf, may use cookies to tailor and improve the content we deliver . . . and to personalize our Web sites(s) and make recommendations based on information, including product choices, a particular visitor has previously provided." *Id.*

Subscribers were also told that web beacons may be used to "let [CenturyTel] know which emails have been opened," Ex. A at 3, and that

CenturyTel "may use advertising companies to deliver ads for CenturyTel-offered services and products on our Web sites or on third party Web sites," which "may contain third-party cookies or Web beacons that allow tracking of visitors' responses to our advertisements." *Id.*

CenturyTel further provided its subscribers with specific notice of the NebuAd trial. As Plaintiff admits in his complaint, CenturyTel "sent customers email notification of its updated Internet Access Privacy Policy." Compl. ¶ 52; Ex. B. That email contained a link to the updated Privacy Policy that disclosed the NebuAd trial. The updated Privacy Policy explained that users' web surfing activity would be observed by a third party as the basis for serving advertisements. In a section entitled "Online Advertising and Third-Party Ad Servers," CenturyTel stated that it "partners with a third party to deliver or facilitate delivery of advertisements to our users while they are surfing the Web. This delivery of advertisements may be facilitated by the serving of ad tags outside the publisher's existing HTML code. These advertisements will be based on those users' anonymous surfing behavior while they are online." Ex. A at 6.

Moreover, CenturyTel gave subscribers the opportunity to opt out of the NebuAd trial if they chose. The Privacy Policy contained a link to NebuAd's website, and also allowed subscribers to click through to register their choice to opt out. Indeed, 82 subscribers opted out. *See* Ex. C at 5

ARGUMENT

Plaintiff fails to state a claim upon which relief may be granted under either Count II of his Complaint – invoking ECPA – or under Count I, invasion of privacy under Montana law. Fed. R. Civ. P. 12(b)(6). As this Court has recognized, consent is a complete defense to both of those counts. *Mortensen*, Slip Op. at 7, 14. And, as in *Mortensen*, when Plaintiff used CenturyTel's Internet services, he agreed to the terms of its Privacy Policy, and thereby consented to the observation, collection, and use of his personal information and web activity, as well as the sharing of that information with, and use of that information by, third parties.

I. PLAINTIFF FAILS TO STATE AN ECPA CLAIM BECAUSE HE CONSENTED TO INTERCEPTION AND USE OF ELECTRONIC COMMUNICATIONS.

Under ECPA, consent is a complete defense to liability. 18 U.S.C. § 2511(2)(d); *Mortensen*, Slip Op. at 7 ("In the Title III milieu as in other settings, consent inheres where a person's behavior manifests acquiescence or a comparable diminution of his or her otherwise protected rights." (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir. 1990))).

"[C]ourts have emphasized that 'consent' must be construed broadly under the Wiretap Act," *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 514 n.23 (S.D.N.Y. 2001); *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir.

1990) ("We agree ... that 'Congress intended the consent requirement to be construed broadly.'" (quoting *United States v. Willoughby*, 860 F.2d 15, 19 (2d Cir. 1988)). Consent need not be express, but rather may be implied. *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *United States v. Verdin-Garcia*, 516 F.3d 884, 894-95 (10th Cir. 2008); *Griggs-Ryan*, 904 F.2d at 116.

Courts have found implied consent so long as a plaintiff was notified that his communications were being monitored. *Mortensen*, Slip Op. at 7. As the Seventh Circuit has put it, "If there is actual notice, ... there will normally be implied consent." *Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir. 1999); *see, e.g.*, *Griggs-Ryan*, 904 F.2d at 117-18; *United States v. Amen*, 831 F.2d 373, 378 (2d Cir.1987).

Here, Plaintiff expressly agreed to the observation, collection, and use of his personal information and web activity by CenturyTel and by third parties when he accessed the Internet under the terms of CenturyTel's Privacy Policy. As described above, the Privacy Policy told subscribers that CenturyTel may collect their personal information and share that information with third parties; that it would do so for marketing purposes; and that it would use cookies and web beacons to monitor subscribers' web surfing activities and email. Further, the Privacy Policy gave specific notice of the NebuAd trial, informing users that their web surfing behavior would be shared with a third party for ad-serving purposes.

8

BRIEF IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION TO DISMISS
COUNTS I & II OF PLAINTIFF'S COMPLAINT

Finally, the Privacy Policy provided a link to NebuAd's website and provided subscribers with the opportunity to opt out of the NebuAd trial.

In *Mortensen*, involving a NebuAd trial conducted by a different ISP, this Court found the existence of consent on almost identical facts. The Privacy Policy at issue in *Mortensen* contained substantially the same statements as CenturyTel's, and the plaintiff's allegations in that case were virtually identical to the allegations made here. *Mortensen*, Slip Op. at 8-10. This case requires the same outcome.

Indeed, in several respects, the notice given by CenturyTel's Privacy Policy was more explicit than that at issue in *Mortensen*. CenturyTel expressly stated that, by using its services, subscribers agreed to the "collection and use of [their] personal information." Ex. A at 2. The Policy stated that such information included, "without limitation, name, address, telephone number, personal computer specifications, e-mail address, user IDs and passwords, billing and transaction information, credit card information, and contact preferences." *Id.*

CenturyTel also specifically informed its users that the data it collected would be shared with third parties for marketing purposes and used to provide "tailored services." *Id.* These services were to include "customiz[ation] [of their] shopping experiences," and "provi[sion] of information regarding goods and services . . . of particular interest to [them]." *Id.* The tailored advertising through NebuAd did just that.

CenturyTel further notified customers that it, or third parties acting on its behalf, would use cookies or web beacons to "tailor and improve content." It even gave users step-by-step instructions on how to enable and disable cookies. *Id.* Moreover, the Privacy Policy contained specific information about the NebuAd trial, informing users that they would receive ads based on their "anonymous surfing behavior" and providing instructions on how to opt-out of these ads. *Id.* Eighty-two customers opted out, *see* Ex. C at 5, but Plaintiff did not. Plaintiff's failure to avail himself of this option when presented with it provides additional evidence of his consent to participation in the NebuAd trial.

Simply put, no reasonable person could read the Privacy Policy and not be put on notice of the possibility that his or her electronic communications would be used for marketing purposes by CenturyTel or third parties. The circumstances make clear that the "party to the communication knew that interception was likely and agreed to the monitoring." *United States v. Staves*, 383 F.3d 977, 981 (9th Cir.2004); *Mortensen*, Slip Op. at 11-12.

II.   PLAINTIFF FAILS TO STATE AN INVASION OF PRIVACY CLAIM UNDER MONTANA LAW BECAUSE HE CONSENTED TO THE NEBUAD TRIAL.

Plaintiff alleges in Count I the invasion of privacy by "intrusion upon seclusion." For the reasons just discussed, Plaintiff also cannot state such a claim under Montana law, even assuming that allowing a third party to access personal

information can constitute an "intrusion" (which CenturyTel in no way concedes). *See Mortensen*, Slip Op. at 14 n.12.

To prevail on the tort of intrusion upon seclusion, a plaintiff must show: (a) an actual, subjective expectation of seclusion or solitude, and (b) that the expectation was objectively reasonable. *Medical Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806 (9th Cir.2002). In light of the notice provided by the Privacy Policy, Plaintiff cannot establish the second, "objective" prong. The Privacy Policy informed the Plaintiff that his Internet activities could be monitored and his personal information collected, used, and shared with third parties for marketing and advertising purposes. Additionally, Plaintiff was informed that by subscribing to CenturyTel's Internet services, he consented to the terms of the Privacy Policy. Moreover, he was specifically informed of the NebuAd trial and given the opportunity to opt out, but he did not take that opportunity.

Under these facts, Plaintiff cannot demonstrate that his expectation of privacy was objectively reasonable. *Miller v. Great Falls Athletic Club, LLC*, 2010 WL 3122633 at *2 (Mont. 2010); *United States v. Heckenkamp*, 482 F.3d 1142, 1147 (9th Cir. 2007) ("privacy expectations may be reduced if the user is advised that information transmitted through the network is not confidential and that the systems administrators may monitor communications transmitted by the user"); *Brubaker*, 184 Mont. at 301 (constitutional right to privacy disappears

when a person voluntarily consents to an invasion); *see also United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir.2004) (individuals may not reasonably expect privacy in transmissions over the internet). Accordingly, Plaintiff cannot state a claim for invasion of privacy by intrusion upon seclusion.

## CONCLUSION

WHEREFORE, this Court should DISMISS Counts I and II of the Complaint.

Dated: January 25, 2011

Respectfully submitted,

/s/ Alan L. Joscelyn

Alan L. Joscelyn
GOUGH, SHANAHAN, JOHNSON & WATERMAN, PLLP
33 S. Last Chance Gulch
Post Office Box 1715
Helena, Montana 59624-1715
Ph. 406-442-8560
Fax 406-442-8783
alj@gsjw.com

David A. Handzo
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Suite 900
Washington, D.C. 20001-4412
Ph. (202) 639-6085
Fax (202) 661-4853
DHandzo@jenner.com

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief in Support of Defendants' Partial Motion to Dismiss Counts I and II of Plaintiff's Complaint contains 2,375 words.

/s/ Alan L. Joscelyn

Alan Joscelyn

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Defendant's Partial Motion to Dismiss Counts I and II of Plaintiff's Complaint this January 25, 2011 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lane K. Bennett
LAW OFFICES OF LANE
K. BENNETT
322 2nd Ave. West, Suite D
Kalispell, Montana 59903
Phone: 406-752-7300
Fax: 406-752-7300
Email: lkbennett@montanasky.us

Scott A. Kamber
KAMBERLAW, LLC
11 Broadway Suite 2200
New York, NY 10004
Phone: (212) 920-3071
Fax: (212) 920-3081
Email: skamber@kamberlaw.com

Rahul Ravipudi
PANISH SHEA & BOYLE LLP
11111 Santa Monica Blvd. Suite 700
Los Angeles, CA 90025
Phone: (310) 477-1700
Fax: (310) 477-1699
Email: ravipudi@psblaw.com

/s/ Alan L. Joscelyn

Alan L. Joscelyn