# Exhibit C



Glen F. Post, III
Chairman and
Chief Executive Officer

personal touch ▪▪▪ advanced communications

P.O. Box 4065
Monroe, LA 71211-4065
TEL 318.388.9542
FAX 318.362.1683

August 7, 2008

***VIA OVERNIGHT DELIVERY:***

The Honorable John D. Dingell, Chairman
Committee on Energy and Commerce
2328 Rayburn House Office Building
Washington, DC 20515

The Honorable Joe Barton, Ranking Member
Committee on Energy and Commerce
2109 Rayburn House Office Building
Washington, DC 20515

The Honorable Edward J. Markey, Chairman
Subcommittee on Telecommunications and the Internet
2108 Rayburn House Office Building
Washington, DC 20515

The Honorable Cliff Stearns, Ranking Member
Subcommittee on Telecommunications and the Internet
2370 Rayburn House Office Building
Washington, DC 20515

Dear Chairman Dingell, Ranking Member Barton, Chairman Markey, and Ranking Member Stearns:

Please allow this correspondence to serve as CenturyTel's response to your letter of August 1, 2008, regarding tailored Internet advertising. CenturyTel appreciates the opportunity to provide the Committee on Energy and Commerce and the Subcommittee on Telecommunications and the Internet with information on this topic. Responses to the specific questions posed in your letter are set forth below.

1. **Has your company at any time tailored, or facilitated the tailoring of, Internet advertising based on consumers' Internet search, surfing, or other use?**

   Yes, CenturyTel conducted a one-time, limited test of NebuAd, Inc.'s customer preference marketing (sometimes called contextual or behavioral advertising) technology, which provides tailored online advertisements based on consumers' anonymous Web browsing histories.

Honorable John D. Dingell, Joe Barton, Edward J. Markey, Cliff Stearns
August 7, 2008
Page 2 of 6

2. **Please describe the nature and extent of any such practice and if such practice had any limitations with respect to health, financial, or other sensitive personal data, and how such limitations were developed and implemented.**

   CenturyTel conducted a one-time, limited test of NebuAd's customer preference marketing ("CPM") technology. At no time was the test used to market CenturyTel's own products or services. Rather, CenturyTel used the test environment to ascertain: (1) whether the inclusion of CPM technology as a component of CenturyTel's existing high-speed Internet service offering would degrade the quality and/or functionality of such service offering; (2) whether CPM technology represented a viable revenue source for the company; (3) how well the notification and opt out processes functioned; and (4) what feedback consumers had concerning the CPM technology.

   In keeping with industry standards and CenturyTel's own corporate principles, the test of CPM technology was designed with consumer privacy in mind. In that regard, it should be noted that CenturyTel's test of NebuAd's CPM technology incorporated data collection limitations with respect to health, financial, and other sensitive personal data. After extensive discussions with NebuAd, it was, and still is, our understanding that NebuAd's CPM technology does not utilize any personal data – whether in coded or anonymous form – regarding certain categories of information, such as personal financial information or sensitive health conditions.

3. **In what communities, if any, has your company engaged in such practices, how were those communities chosen, and during what time periods was such practice used in each? If such practice was effectively implemented nationwide, please say so.**

   NebuAd's CPM test equipment was installed in an aggregated data POP (point of presence) in Kalispell, Montana. The majority of the consumers served by this POP were located in Kalispell, Montana; however, due to the configuration of the POP, a small number of consumers in surrounding communities in Montana, Idaho and Wyoming were served as well. The site was chosen because of the small size of the POP and because of its proximity to qualified technical staff working at or near that facility. CenturyTel's test of NebuAd's CPM technology began in late November 2007, and use of the technology was stopped completely in June 2008. CenturyTel's use of CPM technology was never implemented beyond the test market.

4. **How many consumers have been subject to such practice in each affected community, or nationwide?**

   During the test period, the aforementioned data POP served approximately 20,000 high-speed Internet subscribers included in the test.

5. **Has your company conducted a legal analysis of the applicability of consumer privacy laws to such practice? If so, please explain what that analysis concluded.**

   In connection with the initiation of our test in November 2007, we conducted both a legal analysis and reviewed the CPM activities of advertising networks and other large providers of Internet-related services such as Google Inc., Microsoft Corporation, and Yahoo! Inc. While the details of the legal analysis are within the scope of the attorney-client privilege, we can generally report that our analysis did not lead us to conclude that there was any statute or

Honorable John D. Dingell, Joe Barton, Edward J. Markey, Cliff Stearns
August 7, 2008
Page 3 of 6

regulation that would prohibit CenturyTel's deployment of NebuAd's CPM technology or that the test was unlawful or otherwise impermissible. We have continued reviewing the issues and following the dialogue concerning CPM technology, but as we have terminated the test and not made further deployments, we have not reached any further conclusions beyond our initial analysis.

6. **How did your company notify consumers of such practice? Please provide a copy of the notification. If your company did not specifically or directly notify affected consumers, please explain why this was not done.**

CenturyTel sent notifications to consumers via email. The text of the email read as follows: "Dear CenturyTel Customer, [t]his message is being sent to inform you that CenturyTel has updated its Privacy Policy concerning Internet Access Services. You can access this Privacy Policy by visiting http://interapp.centurytel.com/privacy_policy_1.cfm." The navigation link in the email directed the recipient to CenturyTel's Internet Access Privacy Policy, which was revised three (3) weeks prior to the activation of the CPM appliance.[1] CenturyTel's Internet Access Privacy Policy contained additional information concerning the delivery of tailored online advertisements, as well as the means by which consumers could exclude themselves from the test. Specifically, the notice read as follows:

> ONLINE ADVERTISING AND THIRD-PARTY AD SERVERS. CenturyTel partners with a third party to deliver or facilitate delivery of advertisements to our users while they are surfing the Web. This delivery of advertisements may be facilitated by the serving of ad tags outside the publisher's existing HTML code. These advertisements will be based on those users' anonymous surfing behavior while they are online. This anonymous information will not include those users' names, email addresses, telephone number, or any other personally identifiable information. By opting out, you will continue to receive advertisements as normal; except these advertisements will be less relevant and less useful to you. If you would like to opt out, click here or visit http://www.nebuad.com/privacy/servicesPrivacy.php.

In anticipation of a further launch of NebuAd's CPM technology, CenturyTel also sent notifications to consumers included in the test, as well as consumers who were not included in such test. The notification was sent to CenturyTel's high-speed Internet subscribers in the form of an email, bill message and bill insert. The content of the aforementioned notification read as follows:

> Dear CenturyTel Customer,
>
> CenturyTel continually looks for ways to improve your overall online experience. In that regard, we have enhanced our High-Speed Internet service by working with partners to provide targeted, online advertising for your convenience and benefit. Targeted, online advertising minimizes irrelevant or unwanted ads that clutter your Web pages. If you do not wish to receive targeted, online advertisements, or if you would simply like more information about CenturyTel's use of online advertising, third-party ad

---

[1] The navigation link provided in CenturyTel's initial test notification email is now inactive due to the fact that the test is complete.

Honorable John D. Dingell, Joe Barton, Edward J. Markey, Cliff Stearns
August 7, 2008
Page 4 of 6

    servers and the measures you can take to protect your privacy, please review our Privacy Policy by visiting http://www.centurytel.com/Pages/PrivacyPolicy/#adv.

The navigation link in the aforementioned notification routed the recipient directly to the section of CenturyTel's Privacy Policy dealing specifically with the collection and use of online data. This section of the Privacy Policy contained detailed information concerning the delivery of tailored online advertisements, as well as the means by which consumers could elect not to receive such advertisements. The notice read as follows:

> **CenturyTel partners with a third-party advertising firm to deliver or facilitate delivery of targeted online advertisements to our High Speed Internet subscribers for the purpose of providing these subscribers with a richer, more relevant Web surfing experience.** By observing anonymous, non-personally identifying information regarding a subscriber's Web surfing and search behavior, the ad network can infer the subscriber's interests in certain product or service categories (e.g., automobiles/sports or travel/Europe). The third-party advertising firm can then display advertisements that are more likely to be related to a subscriber's interests. It should be noted that you will not receive any more ads than you would otherwise receive, nor will the targeted online ads you receive be any more intrusive than the standard online ads you would otherwise receive. It should also be noted that these targeted online advertisements are based on the subscriber's anonymous online surfing behavior, and no personally identifying information is collected or used to deliver these advertisements. **CenturyTel's High-Speed Internet subscribers who choose not to receive targeted online advertisements can opt out at any time by <u>clicking here</u> or visiting http://www.nebuad.com/privacy/optout.php.** The opt out is accomplished through the placement of an opt out cookie and applies only to the computer and browser through which the opt out selection was made. If, after opting out, you obtain a new computer, use a different browser, or delete the opt out cookie, you must complete the opt out process again in order to maintain your opt out status. If you choose to opt out, you will continue to receive online advertisements; however, these advertisements will likely be less relevant to your interests. (Original emphasis noted).

7. **Please explain whether your company asked consumers to "opt in" to the use of such practice or allowed consumers who objected to "opt out". If your company allowed consumers who objected to opt out, how did it notify consumers of their opportunity to opt out? If your company did not specifically or directly notify affected consumers of the opportunity to opt out, please explain why this was not done.**

CenturyTel allowed consumers who objected to the use of consumer preference marketing to "opt out" of such practice. The means by which consumers were notified of their opportunity to "opt out" is detailed in CenturyTel's response to Question 6.

8. **How many consumers opted out of being subject to such practice?**

Eighty-two (82) subscribers opted out of CenturyTel's test of CPM technology. Additionally, it should be noted that CenturyTel received numerous consumer responses in connection with its notification efforts. While the number of responses received via phone is unknown,

CenturyTel received approximately 285 responses via email, some of which included multiple inquiries from individual consumers.

9. **Did your company conduct a legal analysis of the adequacy of opt-out notice and mechanism employed to allow consumers to effectuate this choice? If so, please explain what that analysis concluded.**

   In connection with the initiation of our test in November 2007, we conducted a legal analysis regarding the adequacy of the "opt-out" notice and mechanism. While the details of the legal analysis are within the scope of the attorney-client privilege, we can generally report that our analysis did not lead us to conclude that the "opt-out" notice and mechanism used in the test were unlawful or otherwise impermissible. We have continued reviewing the issues and following the dialogue concerning CPM technology, but as we have terminated the test and not made further deployments, we have not reached any further conclusions beyond our initial analysis.

10. **What is the status of consumer data collected as a result of such practice? Has it been destroyed or is it routinely destroyed?**

    No raw or identifiable consumer data was collected or utilized by CenturyTel during the test. After extensive discussions with NebuAd – before, during, and after the test – it is our understanding that the only data collected during the test consisted of codes representing categories of interest that were derived anonymously via software. It is further our understanding that each interest category had a short pre-programmed lifespan, after which it was automatically deleted. Once the test was complete, all such data that had not otherwise expired was destroyed.

11. **Is it possible for your company to correlate data regarding consumer Internet use across a variety of services or applications you offer to tailor Internet advertising? Do you do so? If not, please indicate what steps you take to make sure such correlation does not happen. If you do engage in such correlation. Please provide answers to all the proceeding questions with reference to such correlation. If your previous answers already do so, it is sufficient to simply cross-reference those answers.**

    In theory, it may be possible for any company to correlate data regarding consumer Internet use in the manner described. In practice, however, such correlation would be overly burdensome from both a technical and cost standpoint, and would likely prove to be of little value to the company engaging in such practice.

    Notwithstanding the foregoing, it should be noted that CenturyTel does not correlate data regarding consumer Internet use across services or applications for the purpose of tailoring Internet advertising. Nor does CenturyTel use Internet usage information for its own marketing initiatives. Rather, CenturyTel relies on its own consumer focus groups and national consumer surveys and polls. Within the CenturyTel network, our employees are responsible for managing the network and the delivery of traffic, and there are no mechanisms in place to allow these employees to identify customer traffic patterns and correlate them to personally identifiable information for the purpose of tailoring Internet advertising.

Honorable John D. Dingell, Joe Barton, Edward J. Markey, Cliff Stearns
August 7, 2008
Page 6 of 6

Thank you for this opportunity to present this information to the Committee on Energy and Commerce and the Subcommittee on Telecommunications and the Internet.

Sincerely,

*[signature]*

Glen F. Post, III
Chairman and Chief Executive Officer