IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA,
BILLINGS DIVISION

| | | |
|---|---|---|
| NEIL DEERING, Individually and on behalf of himself and all others similarly situated, | ) ) ) | CV-10-63-BLG-RFC |
| Plaintiff, | ) | **ORDER GRANTING** |
| | ) | **MOTION TO DISMISS** |
| -vs- | ) | **COUNTS I AND II** |
| | ) | |
| CENTURYTEL, INC., a Louisiana Corporation, CENTURYTEL BROADBAND SERVICES, LLC, a Louisiana Corporation, and CENTURYTEL SERVICE GROUP, LLC, a Louisiana Corporation, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Neil Deering filed this putative class action against Internet service providers Century Tel, Inc., CenturyTel Broadband Services, LLC, and CenturyTel Service Group, LLC (collectively, "CenturyTel"). Deering alleges common law claims for invasion of privacy by intrusion upon seclusion (Count I) and trespass to chattels (Count IV), as well as claims for violation of the federal Electronic Communications Privacy Act ("ECPA") (Count II) and Computer Fraud and Abuse Act ("CFAA") (Count III). All claims relate to CenturyTel's

1

collection and diversion of its customers' Internet communications to a third party,
who used the information to target the customers with advertisements.  Pending
before the Court is CenturyTel's motion to dismiss the invasion of privacy and
ECPA claims.  CenturyTel argues its customers consented to the collection and
diversion of their Internet communications and therefore these claims necessarily
fail.  As this Court noted in *Mortensen v. Bresnan Communications*, 2010 WL
5140454 (D.Mont. 2010), consent is a defense to ECPA and invasion of privacy
claims.  Since Deering acquiesced his consent by using CenturyTel's services
knowing his Internet activity could be diverted and used to target him with
advertisements, the motion must be granted.

## II.   BACKGROUND

As alleged in the complaint, CenturyTel is an Internet Service Provider
("ISP") that provides customers in Kalispell, Montana with Internet access.  In late
2007 or early 2008, CenturyTel entered into an agreement with NebuAd, a
provider of "tailored advertising services."  Under the agreement, CenturyTel
agreed to divert its customers Internet communications to NebuAd in exchange for
a share of NebuAd's advertising revenue.  CenturyTel's share was based upon the
number of subscriber accounts per month that were diverted to NebuAd.  The
diversion of Internet communications was accomplished by the installation of

NebuAd's "Ultra-Transparent Appliance" into CenturyTel's network.  NebuAd

then used this information to target them with advertisements.  The Appliance was

removed in June of 2008.

Use of CenturyTel's Internet access services was expressly subject to the

"CenturyTel Privacy Policy for Internet Access Services."  *Doc. 33-1.*[1]  The

Privacy Policy dated October 31, 2007 advised customers to "READ THIS

PRIVACY POLICY IN FULL BEFORE USING THE SERVICES" because "BY

SUBSCRIBING TO ONE OR MORE OF OUR SERVICES, YOU AGREE TO

CENTURYTEL'S COLLECTION AND USE OF YOUR PERSONAL

INFORMATION AS DESCRIBED IN THIS PRIVACY POLICY."  *Id. at p.1.*

Under the heading "COLLECTION OF DATA," CenturyTel customers were

notified that "personal information collected may include, without limitation,

name, address, telephone number, personal computer specifications, e-mail

address, user IDs and passwords, billing and transaction information, credit card

information, and contact preferences."  *Id.*

Under the heading, "SHARING OF DATA," customers were informed that

---

[1]Although the Privacy Policy was not attached to the Complaint, the Complaint made specific reference to the inadequate notice provided by the Privacy Policy.  Complaint, ¶¶ 52-56. Where the plaintiff makes such a reference, the defendant may offer the document and the court may treat the document as part of the complaint for purposes of a Rule 12(b)(6) motion.  *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

CenturyTel "may disclose your personal information to companies and vendors that perform marketing or other services on our behalf." *Id.*  Similarly, under the heading "HOW WE USE THE DATA WE COLLECT," CenturyTel notified its customers that it "uses personal information to better understand your needs and interests, and to provide you with a better service experience ... [and] [t]his may include customizing your shopping experiences ... and providing information regarding goods and services that we believe may be of particular interest to you." *Id.*

The Privacy Policy also contained a paragraph titled "Cookies and Web Beacons" informing customers that "CenturyTel may collect information about your computer hardware and software–for example, your IP address, domain name, and access times–using 'cookies.'  Cookies are files that Web browsers place on the computer of a Web site visitor, and that identify you as a unique user." *Id. at 2.*  This section also stated that CenturyTel "or a third party acting on our behalf, may use cookies to tailor and improve the content we deliver to CenturyTel's family of Web sites, to improve our Web site(s) by assessing which areas, features, and products are most popular, and to personalize our Web site(s) and make recommendations based on information, including product choices, a particular visitor has provided." *Id.*

Most importantly, CenturyTel also provided notice of the NebuAd agreement. Specifically, an email to its subscribers was sent informing them that the Privacy Policy had been updated and providing a link to the updated Privacy Policy. Under the heading, "Online Advertising and Third Party Ad Servers," CenturyTel customers were notified that "CenturyTel partners with a third party to deliver or facilitate delivery of advertisements to our users while they are surfing the web. This delivery of advertisements may be facilitated by the serving of ad tags outside the publisher's existing HTML code. These advertisements will be based on those users anonymous surfing behavior while they are online." *Id. at 5.* CenturyTel customers were further notified of their right to opt out of receiving targeted advertisements by clicking on an imbedded link. The "Online Advertising and Third Party Ad Servers" section also contained a link to NebuAd's website.

## III.   ANALYSIS

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."

Analogous to the arguments made by the defendant ISP in *Mortensen,* CenturyTel argues that by using CenturyTel's services despite the disclosures made in the Privacy Policy, Deering and the putative class members consented to the interception and use of their electronic communications.  2010 WL 5140454, *3-6.  As this Court noted in *Mortensen,* consent is a defense to the EPCA.  2010 WL 5140454, *3, *citing* 18 U.S.C. § 2511(2)(d).  Further, an essential element of the tort of intrusion upon seclusion is that the plaintiff have an objectively reasonable expectation of privacy and there is no reasonable expectation of privacy when a plaintiff has been notified that his Internet activity may be forwarded to a third party to target him with advertisements.  *Mortensen*, 2010 WL 5140454, *5-6.

In the Court's view, there is no distinguishing difference between the "Online Privacy Notice" and "Online Subscriber Agreement" at issue in *Mortensen* and CenturyTel's "Privacy Policy."  It is also very telling, and somewhat troubling, that Deering does not even mention *Mortensen,* even though the same lawyers appear to have filed very similar complaints in these cases.  Accordingly, for the reasons stated in *Mortensen,* the Court concludes Deering consented to the monitoring of his Internet activity.  Counts I and II must therefore

be dismissed.

**IV.**   **ORDER**

For those reasons, **IT IS HEREBY ORDERED** that CenturyTel's Partial

Motion to Dismiss Counts I and II of Plaintiff's Complaint (*doc. 32*) is

**GRANTED**.

Dated this 16th day of May, 2011.

_/s/ Richard F. Cebull_____
Richard F. Cebull
United States District Judge